UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                  :

TAKEAM BRINSON,                        :
                                  :

                    Plaintiff,    :

                                  :

        - against -                 :

                                  :

KIRBY FORENSIC PSYCHIATRIC    :
CENTER; LE-BEN WAN,            :
                                  :

                  Defendants.  :
                                  :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/28/2018__

16-CV-1625 (VSB)

**OPINION & ORDER**

Appearances:

Takeam Brinson
Naponoch, New York
*Counsel for Plaintiff*

Matthew J. Lawson
Michael E. Peeples
Owen T. Conroy
New York State
Office of the Attorney General
New York, New York
*Counsel for Defendant Le-Ben Wan*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Takeam Brinson brings this action against Defendant Dr. Le-Ban Wan pursuant

to 42 U.S.C. § 1983 for involuntary medication and use of excessive force. Before me is

Defendant's motion for summary judgment. Because Plaintiff failed to exhaust his

administrative remedies, and no genuine factual dispute exists such that a reasonable juror could

find in favor of the Plaintiff, Defendant's motion is GRANTED.[1]

---

[1] I am filing a redacted version of this Opinion & Order on the public docket and an unredacted version under seal.

# I.  **Background**[2]

Plaintiff was admitted to Kirby Forensic Psychiatric Center ("Kirby") on January 8, 2015 after he was found unfit to stand trial on charges of Assault in the First Degree as a Hate Crime and Criminal Possession of a Weapon in the Third Degree.  (Def.'s 56.1 ¶¶ 1–2.)[3]  A mental health examination of Plaintiff was performed at Kirby, ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ ████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ ████████████████████████

████████████████████████████████████████

Dr. Wan was Plaintiff's treating psychiatrist during the entirety of Plaintiff's hospitalization at Kirby.  (Def.'s 56.1 ¶ 5.)  On the morning of May 15, 2015, Dr. Wan ordered that Plaintiff be given emergency psychiatric medication on two separate occasions.  (*Id.* ¶ 9.)  These two events are at the center of this litigation.

---

The redacted material consists of information the parties requested and received permission to file under seal.

[2] Unless otherwise noted, the facts referenced in this section are undisputed.

[3] "Def.'s 56.1" refers to Dr. Le-Ben Wan's Rule 56.1 Statement, filed October 17, 2017.  (Doc. 46.)  An unredacted version was filed under seal.  To the extent I do not define terms that are capitalized in this Opinion & Order, it is because they appear as capitalized terms in the parties' submissions.

[4] "Wan Decl." refers to the Declaration of Le-Ben Wan, M.D., Ph.D., filed October 17, 2017.  (Doc. 49.)  An unredacted version was filed under seal.

[5] "Pl.'s Opp." refers to Plaintiff's Declaration in Opposition to Defendant's Motion for Summary Judgment, and the attached opposition and exhibits, filed December 1, 2017.  (Doc. 56.)  Because Plaintiff's Declaration is only partially paginated, the pages cited refer to the pages assigned by the Electronic Case Filing system.

## A.    *The First Administration of Emergency Medication*

Early in the morning on May 15, 2015, Plaintiff was engaged in a physical altercation with another Kirby patient.  (*Id.* ¶ 10.)  According to Plaintiff's deposition testimony, he went into the bathroom and was using the toilet when another inmate in the stall next to Plaintiff was fondling himself.  (Lawson Decl. Ex. A, at 41:2-16, 45:5-10.)[6]  Plaintiff asked the other inmate why he would do that right next to Plaintiff, to which the other inmate did not respond.  (*Id.* at 45:19-24.)  Plaintiff left the bathroom, and a few minutes later, the other inmate walked up to Plaintiff and punched him in the face.  (*Id.* at 45:25-46:22.)  Plaintiff jumped up and grabbed the other inmate's hands to stop him from swinging.  (*Id.* at 46:23-47:4.)  Plaintiff states he did not hit the other inmate during this alteration.  (*Id.* at 47:5-6.)

Plaintiff recounts that while the altercation was in progress, Dr. Wan ordered members of the Kirby staff to restrain Plaintiff, and staff members grabbed Plaintiff, dragged him to a back room, slammed him to the ground, and took his pants off.  (*Id.* at 47:25-48:9.)  While Kirby staff members held Plaintiff down, Dr. Wan administered three shots to Plaintiff.  (*Id.* at 48:25-49:14, 50:8-22.)

Dr. Wan's version of the facts diverges from Plaintiff's version in various ways.  Specifically, at approximately 8:40 a.m. on May 15, 2015, Dr. Wan and Medarbo Ebol, a registered nurse at Kirby, were notified by Kirby staff members that Plaintiff had a physical altercation with another patient and that Plaintiff and the other patient had thrown punches at each other.  (Wan Decl. ¶ 10; Ebol Decl. ¶ 4.)[7]  They were told that members of the Kirby staff

---

[6] "Lawson Decl." refers to the Declaration of Matthew J. Lawson in Support of Dr. Le-Ben Wan's Motion for Summary Judgment, filed October 17, 2017.  (Doc. 48.)  An unredacted version was filed under seal.

[7] "Ebol Decl." refers to the Declaration of Medardo Ebol, R.N., filed October 17, 2017.  (Doc. 50.)  An unredacted version was filed under seal.

intervened, separated the two men, and moved Plaintiff to a side room.  (Wan Decl. ¶ 10; Ebol Decl. ¶ 4.)

Nurse Ebol then went to the side room and spoke with Plaintiff.  (Wan Decl. ¶ 10; Ebol Decl. ¶ 4.)  According to Nurse Ebol, Plaintiff stated that a dispute arose because the other patient had been standing too close to him in the bathroom.  (Ebol Decl. ¶ 4.)  Plaintiff also stated that after they exited the bathroom, the other patient tried to hit him, so he fought back.  (*Id.*)  Dr. Wan also entered the side room to evaluate Plaintiff.  (Wan Decl. ¶ 10; Ebol Decl. ¶ 5.)  Dr. Wan observed that Plaintiff exhibited paranoia, anxiety, and delusional behavior.  (Wan Decl. ¶ 10.)  Specifically, Plaintiff told Dr. Wan that another patient stood too close to him in the bathroom and was otherwise pursuing him, ███████████████████████████████ ███████████████████████████████████████████  Dr. Wan observed that Plaintiff remained angry and agitated, and Dr. Wan concluded that Plaintiff presented a "very real risk" of fighting again unless given psychiatric medication.  (*Id.*)

Dr. Wan offered to administer psychiatric medicine to Plaintiff, but Plaintiff refused to take it.  (*Id.*)  As a result, Dr. Wan ordered that Plaintiff be medicated involuntarily with injections of ███████████████████████████████████.  (*Id.* ¶ 11.)  He further ordered Kirby staff to manually restrain Plaintiff for a period of up to one minute in order to administer the medication, (*id*), but did not provide any other orders or instructions, (*id.* ¶ 13).  Kirby staff stood around Plaintiff and stabilized him by holding his arms and legs for less than one minute so that the medication could be administered.  (*Id.* ¶ 12; Ebol Decl. ¶ 9.)  Dr. Wan and Nurse Ebol deny Plaintiff's assertion that Kirby staff slammed Plaintiff to the ground in order to administer the medication.  (Wan Decl. ¶ 11; Ebol Decl. ¶ 8.)  Dr. Wan did not inject or physically touch Plaintiff at any point.  (Wan Decl. ¶ 14.)  Nurse Ebol administered the

injections.  (Ebol Decl. ¶ 10.)

After the Plaintiff was restrained and the medications were administered, Dr. Wan and Nurse Ebol conducted separate Post-Restraint Evaluations to determine whether he suffered any injuries or complained of any pain.  (Def.'s 56.1 ¶ 32.)  Both Dr. Wan and Nurse Ebol reported that Plaintiff had no visible injuries and did not complain of any pain.  (*Id.* ¶¶ 33–35; Wan Decl. Ex. A; Ebol Decl. Ex. B.)  Dr. Jay Pascual, a physician at Kirby, performed another evaluation of Plaintiff just over one hour later and similarly reported that he did not observe any injuries to Plaintiff, nor did Plaintiff complain of any pain.  (Def.'s 56.1 ¶ 36; Pascual Decl. Ex. A.)[8]

## B.    *The Second Administration of Emergency Medication*

Plaintiff states that after he received the first three injections, he went back to the room where the fight occurred and fell asleep.  (Lawson Decl. Ex. A, at 51:10-16.)  A few minutes after he fell asleep, the same patient with whom he got into an altercation earlier started punching him.  (*Id.* at 51:17:52:2.)  Plaintiff again jumped up and grabbed the other patient's hands, (*id.* at 52:6-15), but did not try to hit the other patient, (*id.* at 53:3-5).  Kirby staff then returned to the room, grabbed Plaintiff, dragged him into the back room, slammed him down, and bended up his arms.  (*Id.* at 52:6-15, 54:9-16.)  Dr. Wan then gave Plaintiff three more injections.  (*Id.* at 52:6-15, 53:11-18.)  After receiving the second round of injections, Plaintiff was moved to another dormitory, where he stayed for a few days.  (*Id.* at 54:19-55:5.)

Dr. Wan's version of the facts again diverges from Plaintiff's version in various ways. Approximately two and a half hours after the initial incident, Dr. Wan and Nurse Ebol were told that Plaintiff had engaged in another physical altercation with the same patient, with both

---

[8] "Pascual Decl." refers to the Declaration of Jay Pascual, M.D., filed October 17, 2017.  (Doc. 52.)  An unredacted version was filed under seal.

patients throwing punches at each other. (Wan Decl. ¶ 18; Ebol Decl. ¶ 13, Ex. A.) After Kirby staff separated the patients and placed them into separate rooms, Dr. Wan and Nurse Ebol went to the back room to evaluate Plaintiff. (Wan Decl. ¶ 18; Ebol Decl. ¶ 13.) Dr. Wan observed that Plaintiff continued to exhibit symptoms of agitation and paranoia similar to the symptoms he exhibited after the first incident prior to being medicated. (Wan Decl. ¶ 18.) Dr. Wan believed additional psychiatric medication was required to prevent Plaintiff from lashing out again, but again Plaintiff refused to voluntarily take the medication. (*Id.*)

Dr. Wan again ordered that ████████████████████████████████████████ ████████████████████████████ After attempting unsuccessfully to counsel Plaintiff, Dr. Wan once again directed Kirby staff to manually restrain Plaintiff for no longer than one minute. (*Id.*; *see also id.* Ex. C.) As with the initial injections, Kirby staff stood around Plaintiff and stabilized him by holding his arms and legs for less than one minute so that the medication could be administered. (*Id.* ¶ 12; Ebol Decl. ¶ 18.) Dr. Wan again denies Plaintiff's assertion that Kirby staff slammed Plaintiff to the ground to administer the medication, (Wan Decl. ¶ 20; Ebol Decl. ¶ 17), and he did not give the injections or physically touch Plaintiff at any point, (Wan Decl. ¶ 22; Ebol Decl. ¶ 19). Nurse Ebol administered the two injections. (Ebol Decl. ¶ 19.)

Dr. Wan and Nurse Ebol again conducted separate Post-Restraint Evaluations to determine if Plaintiff suffered any injuries or complained of any pain. (Def.'s 56.1 ¶ 52.) They both determined that Plaintiff had no visible injuries and did not complain of any pain. (*Id.* ¶¶ 53–56; Wan Decl. Ex. C; Ebol Decl. Ex. C.) In the days following the incidents, Plaintiff continued to deny that he experienced any injuries or adverse consequences in connection with the administration of emergency medicine on May 15, 2015. (Def.'s 56.1 ¶¶ 57–60.)

According to Dr. Wan, Plaintiff's mental condition improved by the end of May 2015, and he became less overtly paranoid.  (Wan Decl. ¶ 30.)  Plaintiff claims that the medications he received left him impaired for weeks, unable to move his arms or think straight.  (Pl.'s Opp. 4.)  He was discharged from Kirby to the New York City Department of Correction on June 15, 2015.  (Wan Decl. ¶ 30.)

### C.    *Plaintiff's Administrative Remedies*

Upon admission, Kirby provides patients a Patient Orientation Handbook (the "Handbook").  (Def.'s 56.1 ¶ 61.)  Kirby provided the Handbook to patients at Kirby in 2015, (*id.* ¶ 62), and at that time the Handbook described multiple options for patients to make complaints about treatment at Kirby, (*id.* ¶ 63; Leitch Decl. Ex. A).[9]  For example, the Handbook informed patients that they could make complaints at their ward's Therapeutic Community Meetings, at Patient Advisory Committee meetings, directly to their Treatment Team, to the Hospital's Ethics Committee, or to the Risk Manager.  (Leitch Decl. ¶¶ 7–10; *id.* Ex. A, at 12, 18.)  The Handbook listed the phone numbers of the Ethics Committee and the Risk Manager.  (*Id.* ¶¶ 9–10; *id.* Ex. A, at 12, 18.)  The Handbook also identified several external channels for lodging complaints, including a hotline to the Justice Center for the Protection of People with Special Needs and to the Joint Commission Office of Quality Monitoring.  (*Id.* ¶¶ 19, 21.)

Regardless of the avenue a patient takes to report a complaint, Kirby employs the same procedure for addressing complaints.  (*Id.* ¶¶ 11, 22.)  Kirby's Risk Manager states that she would always be informed of any complaints of abuse or neglect filed through any of the avenues described above, (*id.* ¶¶ 13, 22), and she was never made aware of any complaints by

---

[9] "Leitch Decl." refers to the Declaration of Kimberly Leitch, filed October 17, 2017.  (Doc. 53.)  An unredacted version was filed under seal.

Plaintiff, (*id.* ¶¶ 16, 23).  Plaintiff suggests that he did not pursue any administrative remedies at Kirby because he was too impaired by the effects of the medications he received on May 15, 2015 to do so.  (Pl.'s Opp. 4.)

## II.    <u>Procedural History</u>

Plaintiff filed this action against Defendant and Kirby on March 3, 2016 while he was in pretrial detention at Rikers Island.  (Doc. 1.)  On April 18, 2016, I entered an order of service, as well as an order dismissing Kirby as a defendant in this action because Kirby is not a "person" within the meaning of § 1983.  (Doc. 7.)

The case proceeded against Defendant Wan, who filed an Answer on August 4, 2016. (Doc. 20.)  On December 15, 2016, after holding an initial pretrial conference, I entered a case management plan and scheduling order.  (Doc. 24.)  On June 22, 2017, I entered an order setting a briefing schedule on Defendant's anticipated motion to dismiss.  (Doc. 32.)  On August 8, 2017, Defendant submitted a letter requesting additional time to file his motion for summary judgment based, in part, on counsel's recent discovery of the exhaustion requirement of the Prison Litigation Reform Act related to § 1983 claims asserted for treatment received at psychiatric institutions like Kirby.  (Doc. 33.)  Defendant's counsel indicated that, given that exhaustion of administrative remedies is an affirmative defense that must be pleaded in the answer, he would be moving to amend the Answer.  (*Id.*)  I granted the extension request on August 9, 2017.  (Doc. 34.)  Plaintiff filed a letter on August 18, 2017 requesting that I not permit Defendant to amend the answer because he would be prejudiced by the amendment. (Doc. 35.)  On September 15, 2017, Defendant filed a motion to amend the Answer in order to add as an affirmative defense Plaintiff's alleged failure to exhaust administrative remedies. (Docs. 38, 39.)

On October 17, 2017, Defendant filed his motion for summary judgment, (Doc. 44), along with a supporting memorandum of law, (Doc. 45), Rule 56.1 statement, (Doc. 46), and declarations, (Docs. 48–53). In addition, Defendant filed a notice, pursuant to Local Civil Rule 56.2, to the pro se Plaintiff describing the purpose, procedures, and implications of Defendant's summary judgment motion. (Doc. 47.) On December 1, 2017, Plaintiff filed a declaration in opposition, along with an opposition brief and attached exhibits. (Doc. 56.) Defendant filed his reply on February 12, 2018. (Doc. 57.)

### III. <u>Legal Standards</u>

#### A. *Rule 15*

Courts should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may deny leave to amend in cases of, among other things, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and/or] futility of amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted). Absent a showing of bad faith or undue prejudice, "[m]ere delay . . . does not provide a basis for the district court to deny the right to amend." *Id.* (internal quotation marks omitted).

#### B. *Rule 56*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citations and

internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV. <u>Discussion</u>

### A. *Motion to Amend Answer*

Defendant seeks leave to amend his Answer to add the affirmative defense of failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Doc. 39.) He also requests that I deem the Answer amended for purposes of his summary judgment motion. (*Id.*) Plaintiff opposes the motion, arguing that he has built his case around the Answer and would be prejudiced by an amendment. (Doc. 35.)

I find no reason not to permit Defendant to amend his Answer. Although Defendant filed his motion to amend just one month prior to the filing of his summary judgment motion, there is no indication that he unduly delayed in filing it. Numerous courts have granted leave to amend an answer to add an affirmative defense at or after the summary judgment stage. *See, e.g.*, *Kelly v. A1 Tech.*, No. 09 Civ. 962(LAK)(MHD), 2010 WL 1541585, at *17–18 (S.D.N.Y. Apr. 12, 2010); *Spier v. Erber*, No. 89 Civ. 1657 (PKL), 1992 WL 230254, at *8–9 (S.D.N.Y. Sept. 1, 1992); *see also Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (permitting assertion of affirmative defense of collateral estoppel at summary judgment stage, even though it was not pleaded in the answer, because plaintiff had an opportunity to respond). In addition, there is no evidence that Defendant makes his motion in bad faith, or that Plaintiff will be unfairly prejudiced by allowing the amendment at this stage, since he had notice of the exhaustion affirmative defense and an opportunity to respond to it in his opposition to Defendant's summary

judgment motion, and since Plaintiff has failed to take any discovery whatsoever in this action. Finally, I deem the Answer to be amended in connection with my consideration of Defendant's summary judgment motion. *See Spier*, 1992 WL 230254, at *8–9 (deeming answer to be amended for purposes of considering affirmative defense to decide a motion for summary judgment).

### B. *Exhaustion of Administrative Remedies*

#### 1. Applicable Law

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). The Supreme Court has held that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA's restrictions apply only when the individual was a prisoner at the time of filing his complaint. *See Gibson v. City Municipality of New York*, 692 F.3d 198, 201 (2d Cir. 2012) (per curiam).

To fulfill the exhaustion requirement, a prisoner must exhaust "all 'available' remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The PLRA requires "proper exhaustion," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issue on the merits." *Id.* at 90, 93 (citation omitted). An administrative grievance procedure is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation,

or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859–61 (2016).

Although prisoners "are not required to specially plead or demonstrate exhaustion in their complaints," *Jones v. Bock*, 549 U.S. at 216, and although many district courts will not assume that a prisoner has failed to exhaust his administrative remedies when that prisoner indicates he has taken certain steps but is silent as to the remaining steps, *see Groenow*, 2014 WL 941276, at *3 (citing case law), dismissal is appropriate on a motion to dismiss where failure to exhaust is clear on the face of the complaint, *see id.* at *4; *see also Loccenitt v. City of New York*, No. 11 Civ. 5651(PAC)(HBP), 2012 WL 3822701, at *3 (S.D.N.Y. July 30, 2012), *report and recommendation adopted,* No. 11 Civ. 5651(PAC)(HBP), 2012 WL 3822213 (S.D.N.Y. Sept. 4, 2012).

### 2. Application

Defendant contends that Plaintiff failed to exhaust the administrative remedies available at Kirby prior to bringing suit, requiring summary judgment in Defendant's favor. I agree.

As an initial matter, the PLRA's exhaustion requirement applies to Plaintiff's claims. Plaintiff was a "prisoner" within the meaning of the PLRA when his claims arose, while he was a patient at Kirby, and when he filed his complaint in this litigation, while he was detained pretrial at Rikers. *See Gibson*, 692 F.3d at 201 ("[A] person who has been charged with a crime and is being held prior to trial under a temporary order of observation at a mental health institution, pursuant to New York state law, is a 'prisoner' within the meaning of the [PLRA]."); *Baez v. Parks*, No. 02 Civ.5821 PKC DF, 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004) ("[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees.").

Plaintiff admits that he did not file a grievance about the events described in his

Complaint, (Doc. 1, at 4), and the record demonstrates he did not exhaust his administrative remedies. As detailed in the Handbook,[10] there were multiple channels for Plaintiff to file a complaint or grievance with respect to the incidents that took place on May 15, 2015. (*See* Leitch Decl. Ex. A.) Plaintiff could have lodged complaints in-person at his ward's Therapeutic Community Meetings, at the Patient Advisory Committee meetings, directly to his Treatment Team, to the Hospital's Ethics Committee, or to Kirby's Risk Manager. (Leitch Decl. ¶¶ 7–10; *id.* Ex. A, at 12, 18.) He could have also called the Ethics Committee or the Risk Manager at the phone numbers listed in the Handbook. (*Id.* ¶¶ 9–10; *id.* Ex. A, at 12, 18.) He also had at least two external channels for making a complaint, including hotlines to the Justice Center for the Protection of People with Special Needs and to the Joint Commission Office of Quality Monitoring, both of which were listed in the Handbook. (*Id.* ¶¶ 19, 21.) At least one court in this district has held that the grievance channels at Kirby described above are "administrative remedies" under the PLRA that a plaintiff must exhaust before filing a complaint. *See Henry v. Hall*, No. 12-cv-04534, at ECF No. 112 (S.D.N.Y. Feb. 19, 2016) (dismissing Kirby patient's § 1983 claims where plaintiff failed to exhaust administrative remedies). However, Plaintiff failed to pursue an administrative remedy through any of these avenues prior to filing his complaint. (Leitch Decl. ¶¶ 16, 23, 25.)

Plaintiff does not argue that any of the exceptions to exhaustion described in *Ross* apply here. Rather, Plaintiff suggests that he did not pursue any administrative remedies at Kirby because he was too impaired by the effects of the medications he received on May 15, 2015. (Pl.'s Opp. 4.) Although Plaintiff attaches an academic article citing to a pre-*Ross* case in the 5th

---

[10] The Handbook was provided to Kirby patients in 2015, (Def.'s 56.1 ¶ 62), and Plaintiff has presented no evidence that he did not receive the Handbook or was unaware of the grievance procedures outlined in the Handbook.

Circuit that held that a plaintiff's untimely administrative grievance satisfied the exhaustion requirement because an injury prevented the plaintiff from timely filing the grievance, *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003), Plaintiff fails to provide any authority within this Circuit for that proposition. However, without deciding whether or not a plaintiff's personal circumstances may render an administrative remedy unavailable under the PLRA, I find that Plaintiff has failed to provide competent evidence that he was so impaired as to be unable to pursue any of the administrative remedies available to him. Defendant asserts that Plaintiff's mental condition improved by the end of May—within two weeks of the incidents in question— and he was deemed competent to proceed to trial by June 15, 2015. (Wan Decl. ¶ 30.) Plaintiff asserts in his opposition (and not in his sworn declaration) that the medication he received "left [him] impaired for weeks not being able to move [his] arms or think straight." (Pl.'s Opp. 4.) However, he does not provide any evidence of his impairment beyond his statement in his opposition. Given the lack of any evidence before me of Plaintiff's mental and/or physical impairment causing him to be unable to exhaust his administrative remedies, summary judgment in Defendant's favor is appropriate. *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."); *see also Lewis v. Greentree Mortg. Serv.*, 51 F. App'x 68 (2d Cir. 2002) (summary order) (affirming summary judgment against pro se plaintiff where plaintiff "failed to present any evidence to support . . . conclusory allegations").

## C. *Involuntary Medication*

Even if Plaintiff's failure to exhaust his administrative remedies were excused, he has failed to present sufficient evidence to overcome summary judgment on his involuntary

medication claim.

## 1. Applicable Law

The Due Process Clause of the Fourteenth Amendment protects the interest of an individual confined by the state from unwanted administration of antipsychotics drugs. *See Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (holding that the respondent "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment"). However, in certain situations where a patient presents a danger to herself and others, the patient's liberty interest yields to the state's interest in protecting the patient and others. *See Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003) (holding that involuntary medication of plaintiff did not violate Due Process Clause where hospital "staff reasonably believed that [plaintiff] was a danger to herself or to others"); *Inesti v. Hogan*, No. 11 Civ. 2596(PAC)(AJP), 2013 WL 5677046, at *11 (S.D.N.Y. Sept. 30, 2013) ("[I]t is well[]settled that a patient's liberty interest in not being involuntarily medicated is overridden in an emergency, where failure to medicate forcibly would result in a substantial likelihood of physical harm to that patient, other patients, or to staff members of the institution." (citation omitted)); *see also Rivers v. Katz*, 495 N.E.2d 337, 343 (N.Y. 1986) ("Where the patient presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution, the State may be warranted, in the exercise of its police power, in administering antipsychotic medication over the patient's objections."); *Addington v. Texas*, 441 U.S. 418, 426 (1979) ("The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill.").

## 2. Application

Dr. Wan argues that his orders to administer medication to Plaintiff on May 15, 2015 fit into the emergency exception to the general rule that the Fourteenth Amendment protects against forced medication. I agree.

Although there appears to be a dispute of fact as to how the altercation between Plaintiff and the other patient began and whether or not Plaintiff was actually the aggressor, there does not appear to be a dispute with regard to the facts on which Dr. Wan based his decisions to administer Plaintiff medication. Dr. Wan asserts that he was first notified at approximately 8:40 a.m. by Kirby staff that Plaintiff had engaged in a physical altercation with another patient and that Plaintiff and the other patient had thrown punches at each other. (Wan Decl. ¶ 10.) When Dr. Wan went to the side room to evaluate Plaintiff, Defendant observed that Plaintiff exhibited paranoia, anxiety, and delusional behavior. (*Id.*) Plaintiff told Dr. Wan that another patient stood too close to him in the bathroom and was otherwise pursuing him, ███████████████ ████████████████████████████████████████████████████████████ ████████████ The doctor also observed that Plaintiff remained angry and agitated. (*Id.*) Based on his observations, Dr. Wan concluded that Plaintiff presented a "very real risk" of fighting again unless given psychiatric medication. (*Id.*) About two and a half hours later, Dr. Wan was notified by Kirby staff that Plaintiff had engaged in another fight with the same patient, with both patients throwing punches at each other. (*Id.* ¶ 18; Ebol Decl. ¶ 13, Ex. A.) When Dr. Wan went to the room to evaluate Plaintiff, he observed that Plaintiff continued to exhibit symptoms of agitation and paranoia similar to what he exhibited after the first incident. (Wan Decl. ¶ 18.) Based on his observations, Dr. Wan believed additional psychiatric medication was required to prevent Plaintiff from lashing out again. (*Id.*) Plaintiff does not appear to dispute these facts,

nor does he present any evidence that Dr. Wan was operating with the understanding that Plaintiff was not an aggressor.

Based on the undisputed facts as to what Dr. Wan knew at the time, he reasonably believed that medication was necessary in order to protect the safety of Plaintiff and others in the facility. As a medical professional, Dr. Wan's judgments in these circumstances are entitled to a "presumption of correctness." *Kulak v. City of New York*, 88 F.3d 63, 77 (2d Cir. 1996). Plaintiff has failed to set forth any evidence that would overcome that presumption.[11] As such, summary judgment is warranted on Plaintiff's involuntary medication claim. *See Anthony*, 339 F.3d at 142 (affirming grant of summary judgment on § 1983 claim where hospital staff "reasonably believed that [plaintiff] was a danger to herself or to others").

### D. *Excessive Force*

As I held above, Dr. Wan is entitled to summary judgment on all of Plaintiff's claims, including his excessive force claim, because Plaintiff failed to exhaust his administrative remedies. However, even if Plaintiff could overcome that hurdle, I find that no genuine factual dispute exists and that no reasonable juror could find in favor of the Plaintiff on his excessive force claim.

### 1. Applicable Law

A successful § 1983 claim requires the plaintiff to establish that the individual defendant was personally involved in the alleged misconduct. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir.

---

[11] Plaintiff claims in his Declaration in opposition that he never suffered from schizophrenia or delusions. (Pl.'s Opp. 1–2.) He attaches a September 27, 2017 record from the Central New York Psychiatric Center that indicates the removal of Plaintiff's designation for "Serious Mental Illness." (*Id.* at 3.) However, given that this record is dated more than two years after the events relevant to this litigation, it does not create a genuine dispute as to whether Dr. Wan reasonably believed that Plaintiff suffered from schizophrenia or delusions on May 15, 2015. I also note that Plaintiff has not offered any evidence that the finding that he was unfit to stand trial was improper, or that Dr. Wan's diagnosis was wrong at the time it was made.

2006).  In addition, the plaintiff must show that "the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473–74 (2015).

The standard to determine whether a government actor applied excessive force is one of objective reasonableness, taking into account the "facts and circumstances of each particular case."  *Id.* at 2473 (citation omitted).  Whether or not the force applied was reasonable depends on "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id.*

### 2.  Application

As an initial matter, Plaintiff has set forth no evidence that Dr. Wan was personally involved in the use of any force, let alone excessive force, against Plaintiff.  Plaintiff testified at his deposition that it was Kirby staff who grabbed him, dragged him to a back room, slammed him to the ground, and took his pants off.  (Lawson Decl. Ex. A, at 47:25-48:9.)  Dr. Wan merely instructed Kirby staff to manually restrain Plaintiff for no longer than one minute in order to administer the medication.  (Wan Decl. ¶¶ 11, 19.)  Dr. Wan provided no further orders or instructions.  (*Id.* ¶¶ 13, 21.)  Plaintiff does not dispute these facts.  As a result, it cannot be said that Dr. Wan was personally involved in any use of force against Plaintiff.[12]

---

[12] To the extent Plaintiff argues that Dr. Wan is subject to supervisory liability, Plaintiff has failed to set forth evidence supporting any of the facts required to establish supervisory liability.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("The personal involvement of a supervisory defendant may be shown by evidence that:  (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.").

Even if Plaintiff had established Dr. Wan personal involvement, he has not rebutted Defendant's evidence that the force used was rationally related to a legitimate governmental objective and that it was not excessive. The need to prevent Plaintiff from hurting himself or others was a legitimate governmental objective, and restraining Plaintiff in order to administer emergency medication was rationally related to achieving that objective. *See Musaidv. Manka,* No. 13-cv-7880 (PKC) (MHD), 2016 WL 540806, at *4 (S.D.N.Y. Feb. 9, 2016) (holding that "the use of force by [hospital] employees was based on a compelling governmental interest to ensure plaintiff was properly medicated" and that the patient's refusal to voluntarily take the medication required "forcefully restrain[ing] plaintiff to ensure that he took his medication"). Further, there is no evidence that the force used might have been excessive. Rather, during both incidents, Kirby staff restrained Plaintiff by holding his arms and legs to stabilize him for less than one minute. (Wan Decl. ¶¶ 12, 20; Ebol Decl. ¶¶ 9, 18.) Importantly, none of the substantial contemporaneous evidence, including Plaintiff's own reporting, indicates that Plaintiff suffered any injuries during either incident. (Def.'s 56.1 ¶¶ 32–36; Wan Decl. Exs. A, C; Ebol Decl. Exs. B, C; Pascual Decl. Ex. A.)

During his deposition, Plaintiff testified that he was "slammed . . . to the ground" by Kirby staff, (Lawson Decl. Ex. A, at 48:6-7), and that he suffered injuries to his shoulder and leg, (*id.* at 62:8-12). However, that testimony is uncorroborated and is contradicted by the contemporaneous medical records. Moreover, it is at odds with the allegations in Plaintiff's complaint, which do not state that Plaintiff was slammed to the ground or physically injured, but rather allege that he was "held down" by Kirby staff and that he "was injured mentally and emotionally." (Doc. 1.) Given the lack of corroborating evidence and Plaintiff's inconsistent statements, I find that no reasonable person would credit Plaintiff's testimony. *See Jeffreys v.*

*City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (upholding grant of summary judgment where there was an absence of evidence corroborating plaintiff's version of events and plaintiff's only evidence was his own contradictory and incomplete testimony); *see also Musaid*, 2016 WL 540806, at *5 (granting summary judgment on excessive force claim where medical records contradicted plaintiff's claim that he suffered injuries); *Muhammad v. New York City*, No. 15 CV 5603-LTS-JCF, 2016 WL 4367970, at *3 (S.D.N.Y. Aug. 12, 2016) (granting summary judgment on excessive force claim where plaintiff relied solely on his own conclusory statements, unsupported by any evidence in the record). Summary judgment is therefore appropriate with regard to Plaintiff's excessive force claim.

**V.**     **Conclusion**

For the foregoing reasons, Defendant's motions for leave to amend the Answer and for summary judgment are GRANTED. The Clerk of Court is respectfully directed to enter judgment for Defendant and close this case.

SO ORDERED.

Dated: September 28, 2018
      New York, New York

Vernon S. Broderick    9/28/2018
United States District Judge